## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO.  3:12-CV-311-MOC-DCK

| | |
|---|---|
| JOE MEDLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) **MEMORANDUM AND** |
| v. | ) **RECOMMENDATION** |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Motion For Summary Judgment" (Document No. 10) and the "Commissioner's Motion For Summary Judgment" (Document No. 11).  This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B).  After careful consideration of the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that "Plaintiff's Motion For Summary Judgment" be <u>denied</u>;  that the "Commissioner's Motion For Summary Judgment" be <u>granted</u>;  and that the Commissioner's decision be <u>affirmed</u>.

## I.      BACKGROUND

Plaintiff Joe Medley ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on his application for disability benefits.  (Document No. 1). On July 16, 2009, Plaintiff filed applications for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405 *et seq*., and for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383 *et seq*., alleging an inability to work due to a disabling condition beginning January 1, 2008. (Transcript of the Record of Proceedings ("Tr.") 9).  The Commissioner of Social Security (the

"Commissioner" or "Defendant") denied Plaintiff's application initially on or about September 11, 2009, and again after reconsideration on January 15, 2010. (Tr. 9, 34, 38, 46). In its "Notice Of Reconsideration" the Social Security Administration ("SSA") issued the following finding:

> The medical evidence shows that your condition is not severe enough to be considered disabling. You are able to think, act in your own interest, communicate, handle your own affairs, and adjust to ordinary stresses without significant difficulties. The records show you have a history of substance abuse. Though you would be unable to meet the functional demands of your past job as a cleaning supervisor *as you have described it*, other information shows that you retain the functional capacity to meet the functional demands of this job *as it is generally performed*. It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 46) (emphasis added).

Plaintiff filed a timely written request for a hearing on February 8, 2010. (Tr. 9, 64). On June 13, 2011, Plaintiff appeared in Greensboro, North Carolina, and testified at a video hearing before Administrative Law Judge Frederick McGrath ("ALJ"), who presided over the hearing from Atlanta, Georgia. (Tr. 9, 17-29). In addition, Plaintiff was represented by counsel at the hearing. Id.

The ALJ issued an unfavorable decision on July 26, 2011, denying Plaintiff's claim. (Tr. 6-16). Plaintiff filed a request for review of the ALJ's decision on September 22, 2011, which was denied by the Appeals Council on April 4, 2012. (Tr. 1-3). The July 26, 2011 ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request.

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on May 15, 2012. (Document No. 1). On May 16, 2012, the undersigned was assigned to his case as the referral magistrate judge. "Plaintiff's Motion For Summary Judgment"

(Document No. 10) and "Plaintiff's Memorandum In Support Of His Motion For Summary Judgment" (Document No. 10-1), were filed September 20, 2012; and the "Commissioner's Motion For Summary Judgment" (Document No. 11) and "Memorandum In Support Of The Commissioner's Motion For Summary Judgment" (Document No. 12), were filed November 13, 2012. The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Max O. Cogburn, Jr. is now appropriate.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 657 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing

disability determinations."); <u>Seacrist v. Weinberger</u>, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion.").  Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. <u>Lester v. Schweiker</u>, 683 F.2d 838, 841 (4th Cir. 1982).

## III.    DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between January 1, 2008, and the date of his decision. [1]  (Tr. 9, 16).  To establish entitlement to benefits, Plaintiff has the burden of proving that he was disabled within the meaning of the Social Security Act.  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987).  The ALJ concluded that Plaintiff was not under a disability at any time from January 1, 2008, through the date of his decision, July 26, 2011.  (Tr. 10, 16).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled.  20 C.F.R. § 404.1520(a).  The five steps are:

> (1)    whether claimant is engaged in substantial gainful activity - if yes, not disabled;
>
> (2)    whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;
>
> (3)    whether claimant has an impairment or combination of impairments that meets or medically equals one of the

---

[1]  Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  <u>Pass v. Chater</u>, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

listings in appendix 1, and meets the duration requirement - if yes, disabled;

    (4)    whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled; and

    (5)    whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. 15).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since January 1, 2008, his alleged disability onset date. (Tr. 11). At the second step, the ALJ found that degenerative and discogenic disorders of the back, essential hypertension, and depression and anxiety were severe impairments. (Tr. 11).[2] At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 12).

Next, the ALJ assessed Plaintiff's RFC and found that he retained the capacity to perform less than a full range of medium work activity, with the following limitations:

> precluded from climbing ladders, ropes and scaffolds and he is precluded from working around unprotected heights and dangerous machinery. Finally, the claimant is precluded from performing work with the public.

(Tr. 13). In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

medical evidence and other evidence" <u>Id.</u>  The ALJ further opined that "he considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p. <u>Id.</u>

At the fourth step, the ALJ found that Plaintiff could not perform his past relevant work as a cleaning supervisor, a laundry worker, a material handler, an equipment operator, a laborer and a pipe layer, because such work "would require the ability to perform at least a full range of medium work." (Tr. 15).  At the fifth and final step, considering the Plaintiff's age, education, work experience, and residual functional capacity, and the Medical-Vocational Guidelines, the ALJ concluded that jobs existed in significant numbers in the national economy that Plaintiff could perform.  (Tr. 15).  Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between January 1, 2008, and the date of his decision, July 26, 2011.  (Tr. 16).

Plaintiff on appeal to this Court makes the following assignments of error:  (1) the ALJ erred in the RFC finding;  (2) the ALJ erred in applying the Medical-Vocation Guidelines;  and (3) the ALJ erred in assessing Plaintiff's credibility.  (Document No. 10-1, pp.9-18).  The undersigned will discuss each of these contentions in turn.

**A.    RFC Finding**

In his first assignment of error, Plaintiff argues that the ALJ failed in his assessment that Plaintiff has the residual functional capacity to perform medium work.  (Document No. 10-1, p.9).  Plaintiff argues that the ALJ "wrongly gave 'substantial probative weight to the findings of the State Agency medical experts...'"  (Document No. 10-1, pp.9-10)  Plaintiff contends that contrary to the ALJ's findings, "the State Agency's assessment was based on an incomplete development of the medical records, was inconsistent with the objective evidence and was not

entitled to substantial weight." (Document No. 10-1, p.10). Specifically, Plaintiff asserts that the objective findings of an MRI on March 18, 2010, "are inconsistent with an ability to perform medium work and instead support Mr. Medley's testimony of disabling back pain from severe spinal stenosis." (Document No. 10-1, p.11). Plaintiff further contends that the ALJ's RFC assessment improperly failed to include limitations on the use of Plaintiff's arms and hands. (Document No. 10-1, pp.12-13).

After review of the record, as well as the parties' briefs, the undersigned is persuaded that substantial evidence supports the ALJ's RFC findings. It appears that the ALJ considered the entire record and assessed an RFC that adequately accounts for all of Plaintiff's established work-related limitations. (Tr. 13-15).

In determining that Plaintiff had the RFC to perform *medium* work subject to additional limitations, the ALJ expressly noted Plaintiff's treatment records from August 2008 through December 2010; his statements regarding his symptoms; and the findings of two State agency medical experts, one of whom evaluated Plaintiff's medical records in January 2010. (Tr. 13-15). Among the exhibits that the ALJ considered were records of Plaintiff's treatment for necrotizing fasciitis in his right hand and arm during April and May 2007. (Tr. 13-14, 300-323). In addition, the ALJ decision notes that on "December 10, 2010, Dr. Alexander Chasnis performed bilateral L4-5 epidural injections" that seemed to resolve Plaintiff's back pain. (Tr. 14).

The hearing transcript reflects that the ALJ also considered Plaintiff's medical records through February 2011, when he was receiving primary care from Lakeside Family Physicians. (Tr. 20, 28, 466-74). The ALJ assigned substantial weight to the opinions of Plaintiff's treating physicians as they pertained to the nature and severity of his alleged impairments. (Tr. 14). At

the same time, he assigned substantial weight to the findings of the two State agency medical experts, citing the consistency of those findings with the weight of the objective evidence found in Plaintiff's treatment records. Id. Specifically, on September 8, 2009, State agency medical consultant Dr. Camille M. Warren, evaluated the record as it existed at the time and concluded that Plaintiff was capable of performing the full range of *medium* work. (Tr. 271-278). On January 13, 2010, another State agency medical consultant, Dr. Pamela Jessup, opined that Plaintiff could perform *medium* work, provided that he climb ladders, ropes, or scaffolds only occasionally and avoid concentrated exposure to environmental hazards, such as machinery and heights. (Tr. 407-414).

It also appears that the ALJ independently weighed the additional evidence submitted after the second State agency evaluation in January 2010, and determined that it did not detract from the validity or strength of the agency experts' opinions. For example, the ALJ cited not only the March 2010 MRI itself, but also other medical records subsequent to the MRI showing that Plaintiff's condition actually improved following his diagnosis of severe spinal stenosis. (Tr. 14) (citing Tr. 415-16, 441-42). Taken as a whole, the medical evidence that Plaintiff's back condition had recently improved with treatment lends substantial objective support to the ALJ's implicit finding that Plaintiff's March 2010 diagnosis of spinal stenosis did not signify an inability to perform the functions associated with his RFC. Indeed, while Plaintiff's March 2010 MRI documented the severity of his degenerative back condition, Plaintiff offered no evidence indicating precisely what functional limitations, if any, his updated diagnosis imposed on his ability to work. (Tr. 14, 415-16).

Based on the foregoing, as well as additional arguments presented by Defendant, the undersigned is satisfied that the ALJ's RFC finding is supported by substantial evidence.

### B.     Medical-Vocation Guidelines

Next, Plaintiff asserts that "[i]f the Administrative Law Judge had limited Mr. Medley to light work, the Administration's Medical-Vocational Guidelines mandates a finding that Mr. Medley is disabled as of his onset date." (Document No. 10-1, p.14).  However, since the ALJ found that Plaintiff was capable of *medium* work, Plaintiff's argument of what is required by the Medical-Vocational Guidelines regarding a limitation to *light* work, is inapplicable here.

Plaintiff's second assignment of error appears to be completely dependent on a determination that the ALJ erred in his RFC assessment.  Based on the previous analysis, the undersigned is not persuaded that ALJ erred in his RFC assessment; therefore, Plaintiff's second argument must also fail.

### C.     Plaintiff's Credibility

Finally, Plaintiff argues that the ALJ erred in assessing Plaintiff's "credibility and recited meaningless boilerplate instead of conducting the required analysis." (Document No. 10-1, p.15).  Plaintiff asserts that his testimony established that he is unable to perform any work on a sustained basis.  (Document No. 10-1, p.16).  Plaintiff argues that "[i]nstead of crediting Plaintiff's subjective complaints at Step 2 as he was required to do, the Administrative Law Judge failed to discuss whatsoever Plaintiff's testimony about his limitations from his back pain and his right arm." Id.

In response, Defendant persuasively asserts that the ALJ properly assessed Plaintiff's credibility.  (Document No. 12, pp.14-19).  As such, the undersigned will adopt much of Defendant's reasoning in the discussion below.

The ALJ's credibility determination "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's

statements and the reasons for that weight," but he need not mechanically recite findings regarding each credibility factor. Lemken v. Astrue, No. 5:07–CV–033-RLV, 2010 WL 5057130 at *5 (W.D.N.C. July 26, 2010) (citing SSR 96-7p, 1996 WL 374186).

Further, "[a]lthough a claimant's allegations about [his] pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [he] suffers." Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996). The ALJ's credibility determination is entitled to deference. See Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

It appears to the undersigned that the ALJ acknowledged Plaintiff's testimony that stabbing back pain prevents him from sitting for more than fifteen to twenty minutes at a time and from standing for more than eight to ten minutes at a time. (Tr. 13) (citing Tr. 22-23). Plaintiff argues, however, that the ALJ failed to explain why he did not credit Plaintiff's testimony regarding his back pain and limited use of his right arm. (Document No. 10-1, p.16) (citing SSR 96-7p). Plaintiff then cites a body of case law, originating in the Seventh Circuit, that criticizes the prevalent use by ALJs of "meaningless boilerplate" that dispatches the credibility issue with the observation that a particular claimant's statements "are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Document No. 10-1, p.17) (citing Bjornson v. Astrue, 671 F.3d 640, 645 (7th Cir. 2012)).

Contrary to Plaintiff's assertion, the ALJ did not rest exclusively on "meaningless boilerplate" in making his credibility assessment. Rather, he compared Plaintiff's alleged symptoms with the available evidence, including medical reports, course of treatment, and

opinion evidence.  (Tr. 13-15).  See 20 C.F.R. §§ 404.1529(c), 416.929(c);  SSR 96-7p, 1996 WL 374186, at *3-8 (listing and discussing factors used in assessing claimant's credibility, e.g., the consistency of claimant's complaints with objective medical evidence and medical opinions about claimant's symptoms and effects; whether treatment has been successful;  and whether claimant has followed prescribed course of treatment).  Specifically, the ALJ cited:  (1) an opinion from a chiropractor, Dr. John F. Stoetzel, that Plaintiff had responded well to chiropractic treatment (Tr. 238-254);  (2) a clinical examination by a treating orthopaedic surgeon, Dr. Vesano, which revealed subsequent to the March 2010 MRI that Plaintiff had "good mobility" in lumbar flexion, with only "slight limitation at the extremes of flexion and extension," and "no evidence of any instability" to support his subjective complaints of pain (Tr. 426-427);  (3) a report from an examining physician, Dr. Chasnis, that epidural injections had resolved Plaintiff's back pain (Tr. 441-442);  and (4) opinions from two State agency physicians that Plaintiff has exertional limitations generally consistent with *medium* work.  (Tr. 271-278, 407-414).

Thus, the boilerplate did not comprise the ALJ's entire credibility discussion, but merely served as a transition into a more detailed discussion juxtaposing Plaintiff's complaints with medical evidence that showed Plaintiff functioning at a higher capacity.  (Tr. 13-15).  Even under the Seventh Circuit approach, the mere inclusion of the challenged language in the ALJ's decision is not grounds for reversal, where, as is the case here, the balance of the decision reveals the ALJ's basis for concluding that the claimant's subjective complaints are not consistent with other evidence supporting the ALJ's RFC finding.

As Defendant further argues, the ALJ's credibility determination was not based *solely* on the fact that Plaintiff's allegations were not substantiated by objective medical evidence, but was

also based on other factors, such as Plaintiff's own statements to physicians that his back pain had eased and, at one point, resolved completely. (Tr. 238-54, 426-27, 441-42). See SSR 96-7p, 1996 WL 374186, at *5 (citing consistency of claimant's own statements within case record as "strong indication" of credibility). Moreover, a State agency medical consultant's January 13, 2010 Physical RFC Assessment, which the ALJ accorded "substantial probative weight," includes a factual finding that Plaintiff's allegations of problems and limitations "appear but partially credible," due to his failure to acknowledge consistently his history of substance abuse in applications and interviews with agency workers, the lack of diagnostic evidence to support his allegations of back pain, and the fact that his physical examinations reveal no abnormalities. (Tr. 414). See SSR 96-7p, 1996 WL 374186 at *8 (explaining that an ALJ must consider and weigh findings by State agency medical or psychological consultants on credibility of claimant's statements about limitations or restrictions due to symptoms).

Another factor supporting the ALJ's credibility determination is Plaintiff's failure to follow his prescribed treatment plan. The ALJ found that, "[a]lthough [Plaintiff's] treatment team prescribed various pain medications such as Motrin, Ibuprofen, Tramadol, Flexeril, Percocet and Oxycontin, the claimant privately used heroin for relief." (Tr. 14).

In short, substantial evidence appears to support the ALJ's decision in this case. The undersigned is satisfied that the ALJ properly evaluated the opinion evidence and the credibility of Plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms. Because Defendant applied the correct legal standards, and further, because Plaintiff did not sustain his burden of showing that he suffers from functional limitations that exceed the RFC the ALJ attributed to him, the undersigned recommends that the Court affirm the Commissioner's decision.

## IV.    CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision.  Richardson v. Perales, 402 U.S. 389, 401 (1971);  Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005).  As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V.    RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: "Plaintiff's Motion For Summary Judgment" (Document No. 10) be **DENIED**; "Commissioner's Motion For Summary Judgment" (Document No. 11) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## VI.    TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within fourteen (14) days of service of same.  Responses to objections may be filed within fourteen (14) days after service of the objections.  Fed.R.Civ.P. 72(b)(2).  Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to de novo review by the District Court.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  Diamond, 416 F.3d at 316;  Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003);  Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989);  Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: March 27, 2013

David C. Keesler
United States Magistrate Judge